UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LANE SMITH,
JENNIFER TAYLOR-SMITH,

      Plaintiffs,

v.                                                                                              No. 5:19-CV-00675-JKP

CARLA CLARK, INDIVIDUALLY;
ALFRED LOPEZ, INDIVIDUALLY;
OFFICER ROBERT FERGUSON,
INDIVIDUALLY; OFFICER ADAM
RULE, INDIVIDUALLY; THE CITY OF
SAN ANTONIO (SAN ANTONIO
POLICE DEPARTMENT), JOHN DOE
OFFICER/AGENT, INDIVIDUALLY;

      Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has under consideration *Defendant Carla Clark's Motion to Dismiss*. ECF No. 48. Plaintiffs filed a response in opposition, *see* ECF No. 54, and Defendant filed a reply, *see* ECF No. 56. The motion is ripe for ruling. For the reasons that follow, the Court grants the motion.

### BACKGROUND

According to Plaintiffs' First Amended Original Complaint (the "complaint") (ECF No. 29), Dr. Lane Smith and Jennifer Taylor-Smith are a married couple and residents of San Antonio, Texas. Carla Clark is an FBI Agent. Accepted as true, Plaintiffs' complaint alleges the following factual allegations with respect to their claims against Defendant Carla Clark.[1]

---

[1] When conducting a Fed. R. Civ. P. 12(b)(6) analysis, a court must accept all of the factual allegations in the complaint as true. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

In June 2017, Plaintiffs, Dr. Lane Smith and Mrs. Jennifer Smith (the "Smiths"), were potential witnesses in a Federal Bureau of Investigation ("FBI") investigation. On or about Friday, June 16, 2017, the Smiths were in the vicinity of the investigation in separate vehicles. Realizing that the "target" of the investigation was leaving the area, Dr. Smith elected to follow the target by "tailing" the target's vehicle in his own. Dr. Smith contacted Agent Clark who instructed Dr. Smith to stop tailing the target. Dr. Smith complied and, after stopping to get his vehicle serviced, went home.

Meanwhile, Mrs. Smith was sitting in her vehicle approximately seventy-five yards from San Antonio AUE Elementary School's main entrance. Knowing that the FBI might be interviewing the target at that location and on that date, Mrs. Smith parked where she could see the target enter or leave the location, intending to "videotape the operation from a distance." While waiting, Mrs. Smith thought she saw someone with the FBI waive her off. Mrs. Smith went home, waited approximately 20 minutes, had second-thoughts about having left the school, returned to the school where she waited for one-and-a-half to two hours, and then left.

Upon leaving the school, Mrs. Smith drove to the Valero on Boerne Stage Road, where her vehicle was surrounded by several "unmarked" cars. Individuals exited these vehicles, pointed guns at her, screamed "FBI," and attempted to open her car-doors. Mrs. Smith did not immediately recognize the people "who were wielding guns at her" as FBI agents because they were all in plain clothes with no visible badges. The agents asked Mrs. Smith for her identification and demanded to know why she was following a white Buick. Mrs. Smith phoned her husband.

Dr. Smith drove to the Valero and asked the agents "what was going on?" Several of the men screamed at Dr. Smith and threatened to arrest him. One man in particular (with a military

crew-style haircut) became extremely agitated and took a fighting stance. Eventually, things calmed down and everyone left.

Following this encounter, the Smiths went home and composed a complaint about the incident. Mrs. Smith called FBI headquarters in Washington D.C. and was instructed to take the complaint to "internal affairs at the FBI San Antonio location." Later that day, the Smiths did so. Upon approaching the main entrance of the building, FBI personnel intercepted the Smiths and instructed them to wait in their vehicle for an escort to the "IA department." After waiting for approximately five minutes, lights on the outside of the building began flashing, agents ran into the parking lot, surrounded the Smith's vehicle, and demanded to know if they had any weapons. Having nothing to hide, the Smiths consented to a vehicle search. Although no contraband was found, the Smiths were ordered back in their vehicle to wait for SAPD officers.

When SAPD arrived, two officers in uniform approached the Smith's vehicle and ordered Dr. Smith out. Officer Ferguson handcuffed Dr. Smith and put him in the back of a police car. Dr. Smith was not told what he was being charged with and he was not Mirandized. Following Dr. Smith's arrest, an unknown black male believed to be an FBI agent, pulled Mrs. Smith out of the car and slammed her against the side of it. Officer Lopez and the unknown agent put Mrs. Smith in handcuffs and placed her in the back of a different police car. While in the police car, Mrs. Smith watched Agent Clark retrieve cell phones from the Smith's vehicle and search through them. The Smiths were then taken to the Bexar County Detention Facility; their vehicle was towed and impounded. The Smiths were never told what they were being charged with. Later, the Smiths learned that a probable cause statement was never filed and a warrant was never issued. All charges against them were dismissed.

**LEGAL STANDARD**

Under Fed. R. Civ. P. 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that asserts a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). Furthermore, when ruling on a motion to dismiss, courts "construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). Nevertheless, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Facts alleged by the plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

To survive a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

> misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8.

## DISCUSSION

Plaintiffs' operative complaint, *see* ECF No. 29, asserts causes of action under 42 U.S.C. § 1983 against the individual defendants for (a) malicious prosecution; (b) false arrest; (c) retaliatory arrest; (d) illegal search; and (e) failure to intervene. Plaintiffs complaint also asserts causes of action under Texas state law for false arrest and false imprisonment; intentional infliction of emotional distress; and malicious prosecution. By their response, Plaintiffs abandon the Texas state law tort claims and any § 1983 claim asserted against Defendant Clark. ECF No. 29. Although the operative complaint does not specifically assert a *Bivens* cause of action, in their response to Defendant Clark's motion to dismiss, Plaintiffs aver that they did not intend to abandon the *Bivens* cause asserted in their original complaint and request leave to file a second amended complaint to clarify that point. *See* ECF No. 54 at 1-2, par. 3. The operative complaint alleges facts to support a *Bivens* claim against Defendant Clark. Accordingly, an amendment to make that clarification is unnecessary.

Defendant's motion to dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(6). Defendant contends that Plaintiffs fail to state a *Bivens* claim and did not properly serve Defendant Clark or

the United States. Because the Court concludes that Plaintiffs have failed to state a *Bivens* claim, the Court does not address Defendant's service arguments.

"[A] *Bivens* action is the federal analog to suits brought against state officials under Rev. Stat. § 1979, 42 U.S.C. § 1983." *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) (citations omitted); *see also Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). "Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted). "[T]here can be no § 1983 liability unless the plaintiff has "suffered a constitutional violation . . . at the hands of . . . a state actor." *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc). "*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Id.* (quoting *Carlson* v. *Green,* 446 U.S. 14, 18 (1980)).

"Plaintiffs suing governmental officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation. This standard requires more than constitutional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citations omitted). In order to state a federal civil rights claim against a particular defendant, plaintiff must allege that a specific defendant, while acting under color of state law, deprived him or her of a right guaranteed under the Constitution or a federal statute. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Mouille v. City of Live Oak, Tex.,* 977 F.2d 924, 929 (5th Cir. 1992). In other words, the complaint must set forth factual allegations that a specific defendant took an affirmative action, participated another's

affirmative act, or failed to take an action that he or she was legally required to do that caused the alleged constitutional violation. *Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988) (citation omitted). The court's inquiry "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Id.* (citations omitted).

As to Defendant Clark, Plaintiffs' allege they consented to a search of their car for weapons and Agent Clark exceeded the scope of that consent when she searched the Smith's cell phones without a warrant. A warrantless search is "*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz* v. *United States*, 389 U.S. 347, 357 (1967) (footnote omitted); *see also Riley* v. *California*, 573 U.S. 373, 382 (2014) ("In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement"). In *Bivens*, the Supreme Court held that "a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages ... even though no federal statute authorized such a claim." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). At the motion to dismiss stage, the focus is not on whether they will prevail, but whether Plaintiffs should be permitted to present evidence to support adequately asserted claims. *Twombly*, at 563 n.8. Accordingly, accepting their factual allegations as true, Plaintiffs have adequately alleged that Defendant Clark violated their Fourth Amendment rights. However, Defendants motion to dismiss must be granted because this case presents a "new context" and the availability of a remedy under the Federal Tort Claims Act ("FTCA") is a "special factor" that counsels against implying a *Bivens* remedy. *See Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843, 1859-61.

Where a plaintiff has plausibly alleged a *Bivens* claim, the Court must decide whether it is appropriate to "imply" a *Bivens* remedy. *Id.*, 137 S. Ct. at 1855-56. To imply a *Bivens* remedy, a court must first determine whether the claim arises in a "new context." *Id.*, 137 S. Ct. at 1859. "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then the context is new." *Id*. If the case arises in a new context, the Court must then decide whether to engage in the "disfavored judicial activity" of "expanding the *Bivens* remedy" to the case before the Court. *Id.*, 137 S. Ct. at 1857 (quotation omitted).

As to the first question, whether this "case is different in a meaningful way from previous *Bivens* cases," the Supreme Court has explained:

> Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.*, 137 S. Ct. at 1859-60. In a recent case, the Fifth Circuit made clear the strictures district courts must apply when analyzing whether a case arises in a new context. *See Oliva v. Nivar*, 2020 U.S. App. LEXIS 28052, at *5-6, 2020 WL 5227472, at *2 (5th Cir. Tex. Sept. 2, 2020).

First, that this case involves allegations that Defendant Clark violated Plaintiffs' Fourth Amendment rights is irrelevant. "Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'" *Id*. (quoting *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019), *cert. denied*, 2020 WL 3146702 (2020)). Second, "it is not enough even if 'a plaintiff asserts a violation of the same clause of the

same amendment *in the same way*.'" *Id.* (emphasis in original). Third, the difference of a single factual detail may differentiate the case in a "meaningful way." *Id.*

To illustrate how this case arises in a new context, the facts alleged in *Bivens* follow. The complaint in *Bivens* alleged that on November 26, 1965,

> agents of the Federal Bureau of Narcotics acting under claim of federal authority, entered [Webster Bivens'] apartment and arrested him for alleged narcotics violations. The agents manacled petitioner in front of his wife and children, and threatened to arrest the entire family. They searched the apartment from stem to stern. Thereafter, petitioner was taken to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual strip search.

*Bivens*, 403 U.S. at 389. Webster Bivens and the Smiths alleged violations of "rights of privacy"—Bivens for the warrantless search of his home and his person and the Smiths for the warrantless search of their cell phones. *Id.*; ECF No. 29. That is where the similarities between the Bivens case and the Smith's case end.

Each case "involves different conduct by different officers from a different agency." *Oliva*, 2020 WL 5227472, at *3 (quoting *Cantú*, 933 F.3d at 423). *Bivens* arose in a private home; the Smith's case arose outside of San Antonio FBI offices. *Bivens*, 403 U.S. at 389; ECF No. 29 at 4. In *Bivens,* Federal Narcotics officers made a warrantless search for narcotics. *Bivens*, 403 U.S. at 389. Here, FBI agent Clark made a warrantless search of the Smith's cell phones, the reason unknown. ECF No. 29 at 5. The dispute that gave rise to the altercation in *Bivens* involved a narcotics investigation; the Smith's phones were searched apparently due to their interference in an FBI investigation. *Bivens*, 403 U.S. at 389; ECF Nos. 29 at 4-5; 30 at 15 n.8. Webster Bivens' home was searched "stem to stern" and he was strip-searched; Agent Clark "searched through" the Smith's phones. *Bivens*, 403 U.S. at 389; ECF No. 29 at 4-5. The facts alleged in this case thus dictate that here, "the context is new." *See Oliva*, 2020 WL 5227472, at *3.

Having concluded that this case arises in a new *Bivens* context, the Court must decide whether to engage in the "disfavored judicial activity" of recognizing a new *Bivens* action and extending a *Bivens* remedy to the Plaintiffs. *Abbasi*, 137 S. Ct. at 1857 (quotation omitted).

> A *Bivens* remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress. A special factor is a sound reason to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong. The court's focus is on maintaining the separation of powers: separation-of-powers principles are or should be center to the analysis. The only relevant threshold—that a factor counsels hesitation—is remarkably low. If any special factors do exist, then courts *must refrain* from creating an implied cause of action in that case.

*Canada v. U.S. IRS*, 950 F.3d 299, 309 (5th Cir. 2020) (citations and quotations omitted) (emphasis in original).

The existence of a statutory scheme for torts committed by federal officers is a special factor that "counsels hesitation" in this case. *See Abbasi*, 137 S. Ct. at 1858 (noting, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action"). Before *Abbasi*, the FTCA was considered "parallel" and "complementary" to a *Bivens* remedy. *Carlson*, 446 U.S. at 19-20. As the Court in *Abbasi* observed, and the Fifth Circuit in *Cantú* echoed, "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S. Ct. at 1863; *Cantú*, 933 F.3d at 423. The Supreme Court has also held that alternative remedies "need not be perfectly congruent" to preclude a *Bivens* remedy. *Minneci v. Pollard*, 565 U.S. 118, 129 (2012). In other words, "[t]hat the FTCA might not give [Plaintiffs] everything [they seek] is therefore no reason to extend *Bivens*." *Oliva*, 2020 WL 5227472, at *4 (citing *Hernandez*, 140 S. Ct. at 750). The Fifth Circuit has therefore found that, post-*Abbasi*, the FTCA as a potential remedy counsels hesitation in extending a *Bivens* remedy. *See Oliva*, 2020 WL 5227472, at *4; *Cantú*, 933 F.3d at 423. This

10

Court thus declines to imply a *Bivens* remedy in this new context. Accordingly, the Court grants Defendant Carla Clark's motion to dismiss pursuant to Rule 12(b)(6).

## CONCLUSION

For the reasons set forth above, *Defendant Carla Clark's Motion to Dismiss* (ECF No. 48) is GRANTED. Accordingly, Defendant Carla Clark is DISMISSED from the action. In accordance with Fed. R. Civ. P. 54(b), a Partial Final Judgment is entered contemporaneously herewith.

It is so ORDERED.

SIGNED this 29th day of September 2020.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE