UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LANE SMITH,
JENNIFER TAYLOR-SMITH,

     *Plaintiffs*,

v.                                                           No. SA:19-CV-675-JKP

OFFICER ALFRED LOPEZ,
OFFICER ROBERT FERGUSON,
and OFFICER ADAM RULE,

     *Defendants*.

## MEMORANDUM OPINION AND ORDER

The Court has under consideration Defendants' motions for summary judgment and sanctions. ECF Nos. 60, 72.[1] The motions are ripe for ruling. For the reasons set forth below, the Court denies the motion for sanctions and grants in part and denies in part the motion for summary judgment.

### I. BACKGROUND

This civil rights action arises out of Plaintiffs' June 16, 2017 arrest for interfering with the duties of a public servant in violation of Texas Penal Code § 38.15. Plaintiffs' filed the action on June 13, 2019; the case was reassigned to the undersigned on August 27, 2019. ECF Nos. 1; 12. With leave of Court, Plaintiffs' filed their First Amended Complaint, the operative pleading, on November 7, 2019. ECF No. 29. On September 29, 2020, the Court granted Defendant FBI Agent Carla Clark's ("Agent Clark") motion to dismiss. ECF No. 62. And on October 23, 2020, Plaintiffs dismissed their claims against the City of San Antonio. ECF No. 66. The motions now

---

[1] The motion for summary judgment is brought pursuant to Fed. R. Civ. P. 56 but is styled as a motion to dismiss. Because the parties presented evidence and argued the motion according to the summary judgment standard, the Court construes the motion as a motion for summary judgment.

before the Court are brought by the remaining Defendants Alfred Lopez ("Officer Lopez"), Robert Ferguson ("Officer Ferguson"), and Adam Rule ("Officer Rule"). ECF Nos. 60, 72. Plaintiffs responded to the motions, Defendants replied, and the Court heard the arguments of the parties at a hearing convened January 28, 2021. Accordingly, the motions are ripe for ruling.

## II. LEGAL STANDARD

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).[2] "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 323; *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery, or admissions that demonstrate the absence of a triable dispute of material

---

[2]Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

2

fact. *Celotex Corp.*, 477 U.S. at 323; *Rodriguez*, 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal citation omitted).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586-87; *see also* Fed. R. Civ. P.56(c). Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994)). Further, should the nonmoving party fail "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music*, *Inc. v. Bentley*, SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

In determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion.

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citations omitted).

### III. APPLICABLE LAW

**42 U.S.C. § 1983**

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted). "[T]here can be no § 1983 liability unless the plaintiff has "suffered a constitutional violation . . . at the hands of . . . a state actor." *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc).

**Qualified Immunity**

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'" *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (per curiam) (quoting *Mullenix* v. *Luna*, 577 U. S. 7, 11 (2015) (per curiam) (quoting *Pearson* v. *Callahan*, 555 U. S. 223, 231 (2009))). When qualified immunity is asserted by a law enforcement officer, the "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Saucier* v. *Katz*, 533 U. S. 194, 202 (2001)).

When determining whether an official can claim qualified immunity, courts typically engage in a two-step analysis. *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) "First, they assess whether a statutory or constitutional right would have been violated on the facts alleged." *Id.* (citing *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004)). "Second, they

4

determine whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* However, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

The Fifth Circuit requires that the law "so clearly and unambiguously prohibited the violative conduct that '*every* reasonable official would understand that what he is doing violates the law.'" *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)); *accord Estate of Bonilla v. Orange Cty.*, 982 F.3d 298 (5th Cir. 2020). The Supreme Court "does not require a case directly on point . . . but existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (quoting *Mullenix*, 577 U.S. at 12) (quoting *al-Kidd*, 563 U.S. at 741).

**Texas Penal Code § 38.15**

An individual commits the offense of Interference with Public Duties "if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law[.]" Tex. Penal Code. § 38.15. It is a defense to prosecution under this section that "the interruption, disruption, impediment, or interference alleged consisted of speech only." *Id.* § 38.15(d). A person acts with criminal negligence if the person "ought to be aware of a substantial or unjustifiable risk" that the person's conduct will result in interference. Tex. Penal Code § 6.03. "The risk must be of such a nature and degree that the failure to perceive it constitutes a

gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.*

## IV. FACTS

Agent Clark, Officer Lopez, and Lane Smith's ("Dr. Smith"), versions of events differ.[3] Thus, the Court recites each version, presenting the facts in the light most favorable to the party telling their story. As to analysis, when versions of events differ, the Court is "required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion. In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal citations and quotation marks omitted). The Court is not required to credit the opposing party's version when facts are contradicted by unambiguous video evidence; it should view the facts "in the light depicted by the videotape." *Id.* at 380-81. And the Court may assign greater weight to "facts evident from the video recordings taken at the scene." *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)).

**Dr. Smith's Version of Events**

Dr. Smith testifies by declaration to the following. ECF No. 68-2. In June 2017, the Federal Bureau of Investigation ("FBI"), and specifically Agent Clark, was investigating allegations that concerned the welfare of his sister's children. To aid the investigative team's interview of his sister's former spouse, Dr. Smith agreed to collect his sister from her home at

---

[3] Jennifer Taylor-Smith's version of events is recited only in the unverified amended complaint. Because the Court "may not rely on mere factual allegations in an unverified complaint to make summary-judgment rulings," it does not present Mrs. Taylor-Smith's recitation. *Joseph v. Bartlett*, 981 F.3d 319, 334 (5th Cir. 2020). In conducting the analysis below, the Court relies on the summary judgment evidence attached to the briefing, including the sworn declarations and the video evidence.

11:30 AM on June 16, 2017. Agent Clark and her team planned to question the former spouse at the home and preferred that the sister not be present when the team encountered the former spouse, who would be arriving to collect his children for summer vacation.

Dr. Smith arrived at the prearranged time of 11:30 AM but the former spouse showed up early and, aware of Dr. Smith's presence, he turned around and drove away. Because the FBI had not yet arrived, Dr. Smith and his sister followed the former spouse, called Agent Clark, and explained the situation. Agent Clark directed Dr. Smith and his sister to stop following the former spouse, which they did. Dr. Smith returned his sister to her home and he then drove to the GMC dealership to have his truck serviced.

Approximately two hours later, Dr. Smith received a call from his wife, Jennifer ("Mrs. Taylor-Smith").[4] She told him she was in her vehicle at a Valero gas station, that she was surrounded by vehicles, and she was scared. Dr. Smith was close-by and went to her aid. When he arrived, he encountered FBI agents and asked them why they were harassing his wife. The FBI allowed Mrs. Taylor-Smith to leave but continued to interact with Dr. Smith by yelling at him and being very dismissive. Eventually, they allowed him to leave.

At home, the Smiths discussed the interaction with the FBI. They agreed that there was no reason for the conduct exhibited at the Valero and decided to file a complaint. After drafting their complaint, the Smiths called the FBI headquarters in Washington and were instructed to take their complaint to internal affairs at the FBI building located at 5740 University Heights Blvd. in San Antonio. At approximately 3:41 PM the Smiths left home to deliver their complaint.

When the Smiths arrived at the FBI building and began walking toward the guardhouse FBI personnel approached them, asked their business, and instructed them to return to their

---

[4] The Court uses "the Smiths" or "Dr. and Mrs. Smith," when referring to Lane Smith and Jennifer Taylor-Smith as a couple.

vehicle to wait for an escort. The Smiths returned to their vehicle. After five to ten minutes of waiting in their vehicle, lights started flashing on the outside of the FBI building. Agents exited the building, surrounded the Smith's vehicle, and asked to search the vehicle for weapons to which the Smiths consented.

The Smiths were then told to wait in their vehicle until San Antonio Police Department ("SAPD") officers arrived. Officers Ferguson and Rule arrived, took statements from Officer Lopez and Agent Clark, and arrested the Smiths.

**Agent Clark's Version of Events**

Agent Clark's version of events is taken from the Axon footage.

As told to Officer Rule: On June 15, 2016, Agent Clark spoke with Dr. Smith's sister and told her to stay away from the investigation. Specifically, to not interfere with the investigators' planned interception of the former spouse.

On June 16, 2016, Dr. Smith and his sister followed the former spouse in an attempt to get his license plate number. In conversation with them in real time, Agent Clark told the pair to stop following the former spouse. They complied.

Shortly thereafter, the investigators met with the former spouse at an elementary school. While interviewing him, Mrs. Taylor-Smith "kept driving by, driving by, driving by, driving by."

Upon leaving the elementary school, the investigators followed Mrs. Taylor-Smith into a parking lot and Agent Clark blocked her in. Mrs. Taylor-Smith refused to identify herself and said she didn't do anything. Dr. Smith then showed up in the parking lot, got in a confrontation with an Agent Baker, and would not back off. During the confrontation, Dr. Smith admitted to following the former spouse. After the confrontation, the Smiths left.

The investigators then met the former spouse at the FBI building at 5740 University Heights Blvd. After approximately two hours, the investigators concluded their inquiry into the former spouse, clearing him of the allegations made by Dr. Smith's sister. The investigators attempted to escort the former spouse out of the building to his car only to find the Smiths in the parking lot, where Dr. Smith and Agent Baker started yelling again. The investigators told the Smiths to leave but they refused, saying that they were there to file a complaint against the investigators and they were not going to leave until they filed their complaint. Ex. 6, Rule Body Cam, at 10:50-13:14; 14:10-14:30; 15:02-22:25.

As told to Officer Ferguson: On June 16, 2017, as part of an investigation, Agent Clark set-out to interview the former spouse. Throughout that day, the Smiths followed the investigators; trailed the former spouse; were told by the investigators "not to be here" and yet, showed up at the FBI building; and had "two violent confrontations" with the investigators. Ex. 7, Ferguson Body Cam, at 00:55-01:20.

**Officer Lopez's Version of Events**

In June 2017, SAPD Officer Lopez was detailed to work with the FBI. He testifies by declaration to his version of events. His testimony is based on personal knowledge and information relayed to him by co-investigators. ECF No. 60-5.

Officer Lopez had personal knowledge of the following events. As part of Agent Clark's team, Officer Lopez was present at the elementary school when the investigators interviewed the former spouse. At the school Lopez was aware of a dark SUV in which the driver was filming the investigators' activities. The SUV "left, returned, and generally maneuvered to stay nearby." During the interview at the school, the former spouse agreed to take a polygraph so everyone

decamped to the FBI building. Before departing, Officer Lopez looked for Dr. Smith or his sister. Not seeing anyone, he loaded his truck and drove to the FBI building.

After the polygraph was completed, the investigators thought it would be wise to check the parking lot before the former spouse left the building. When they did, they found the Smiths sitting in their vehicle. Dr. Smith alighted the vehicle and again argued with the agents. The Smiths were told to leave but refused, saying they were there to file a complaint against the agents. The agents told Dr. Smith to return to his vehicle, which he did. After the former spouse left, Lopez summoned SAPD to arrest the Smiths.

Officer Lopez gained knowledge of the following events from his co-investigators. Agent Clark called Dr. Smith's sister on June 15, 2017, told her the investigation team planned to intercept her former spouse the next day, and warned her to not be in the area. At approximately 11:30 AM on June 16, 2017, Agent Clark told Dr. Smith and his sister to stop following the former spouse and leave the area. After the investigators and the former spouse left the school, the dark SUV followed the former spouse's vehicle. When the SUV entered a gas station directly behind the former spouse, "the investigators were concerned . . . and decided to find out what was going on." The driver refused to identify herself or talk to the agents.

The agents learned the driver of the dark SUV was Mrs. Taylor-Smith. As the agents were trying to find out what she was doing, Dr. Smith arrived at the gas station and "engaged in an aggressive argument with some of the agents." The investigators told the Smiths to stay away from the former spouse and the Smiths left.

## V. ANALYSIS

As an initial matter, the Court addresses Defendants' objection to the video evidence. Defendants object to Plaintiffs' video evidence and "move the Court omit them from

consideration with respect to the Defendants' motion." ECF No. 73 at 6. Plaintiffs' video evidence consists of a clip of Lane Smith communicating with FBI Agent Clark via mobile phone, SAPD Axon footage, and an unreadable file titled "Ex3-Video-FBIParkingLot."

Under Fed. R. Civ. P. 56(c)(2), "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Summary judgment may be based only on admissible content and evidence must be authenticated before it is admissible. However, authentication is a low burden, requiring only a showing "sufficient to support a finding that the item is what the proponent claims it is" and a video's "own distinctive characteristics" might overcome it. *McLain v. Newhouse (In re McLain)*, 516 F.3d 301, 308 (5th Cir. 2008) (citation omitted). Moreover, unauthenticated evidence is properly before the court on summary judgment, because "[a]dmissible evidence may be submitted in an inadmissible form at the summary judgment stage." *Allen v. Hays*, 812 F. App'x 185, 193 (5th Cir. 2020) (per curiam) (citation omitted).

The evidence contained in Plaintiffs' video clip is undisputed; Defendants do not contend the Axon video is not what it purports to be; and the FBI parking lot video was unreadable so it has not been viewed by the Court. Accordingly, the objection is overruled.

**Probable Cause and Qualified Immunity**

"The constitutional claim of false arrest requires a showing of no probable cause." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Lockett v. New Orleans City*, 607 F.3d 992, 998 (5th Cir. 2010) (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). While "[t]he right to be free from false arrest without probable cause is clearly

established," *Bone v. Dunnaway*, 657 F. App'x 258, 261 (5th Cir. 2016) (per curiam), "law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Westfall v. Luna*, 903 F.3d 534, 543 (5th Cir. 2018) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987). And "if officers of reasonable competence could disagree [as to whether probable cause existed], immunity should be recognized." *Mendenhall*, 213 F.3d at 230. Thus, "to overcome qualified immunity, [Plaintiffs] must show that no reasonable officer would have believed that there was probable cause to arrest [them]." *Bone*, 657 F. App'x at 261 (citing *Club Retro*, 568 F.3d at 206).

**A. Defendants Ferguson and Rule**

Officers Ferguson and Rule present three bases to dismiss the claims against them. First, they assert qualified immunity. They next argue that the pleading does not implicate either of them because they merely arrested and transported the Smiths. In support of this argument, Ferguson and Rule point to their sworn declarations and their narrative police reports. ECF Nos. 60-3 at 1-4, 14; 60-4 at 1-3, 13. Finally, they argue that under *Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir. 1991), when applying federal law, a probable cause finding does not require the presence of the officer. Rule drafted the police report and presented the facts to the magistrate and both Ferguson and Rule's narrative reports stated the facts as relayed to them by Officer Lopez and Agent Clark. Plaintiffs argue that Ferguson and Rule lacked authority to arrest because neither officer had probable cause to arrest. For the reasons set forth below, the Court concludes Officers Ferguson and Rule are entitled to qualified immunity.

Probable cause to arrest depends "upon whether, at the moment the arrest was made . . . the facts and circumstances within [the arresting officers'] knowledge and of which they had

reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck* v. *Ohio*, 379 U.S. 89, 91 (1964). "Probable cause for a warrantless arrest requires that the arresting officer have either actual knowledge or 'trustworthy information' of facts and circumstances which could 'warrant a man of reasonable caution' in believing that the arrestee has committed a crime." *United States v. Reynolds*, 511 F.2d 603, 607 (5th Cir. 1975) (quoting *Carroll v. United States*, 267 U.S. 132, 45 (1925)).

An arresting officer may rely on statements "of fellow officers *participating in the same investigation*," *United States v. May*, 819 F.2d 531, 536 (5th Cir. 1987), or upon "collective knowledge of the officers *working the case*," *United States v. Kye Soo Lee*, 962 F.2d 430, 435 (5th Cir. 1992) (emphases added). When determining probable cause, such statements "are entitled to a presumption of reliability." *May*, 819 F.2d at 536. An officer may also consider information relayed by eyewitnesses. *Bone*, 657 F. App'x at 261 (citing *Cooper v. City of La Porte Police Dep't*, 608 F. App'x 195, 200 (5th Cir. 2015) (citing *United States v. Nunez-Sanchez*, 478 F.3d 663, 666 (5th Cir. 2007))). *See also Roy v. City of Monroe*, 950 F.3d 245, 255-56 (5th Cir. 2020) (collecting cases).

The Axon video shows Officers Ferguson and Rule were summoned and dispatched to the FBI building for the sole purpose of arresting the Smiths for interference. Ex. 4, Bratina Body Cam, at 01:30-05:30. The Axon video also shows Agent Clark and Officer Lopez relaying the events to Officer Ferguson and Officer Rule. In giving her statement, Agent Clark indicated that the facts she was providing supported a finding of probable cause for interference. Ex. 6 at 08:30-10:35; 10:49-14:36. Thus, it can be reasonably inferred that Officers Ferguson and Rule

simply carried out directions to arrest given by another officer who they reasonably believed had probable cause to arrest. ECF Nos. 60-3 at 1-4, 14; 60-4 at 1-3, 13; Ex. 4, 6 & 7.

As noted above, an officer who does not have personal knowledge of the basis for probable cause may make a warrantless arrest by relying on information from co-investigators, the collective knowledge of officers working the same case, or eyewitnesses. The Fifth Circuit has applied the collective knowledge doctrine to two types of cases:

> (1) those where the arresting officer has *no personal knowledge of any of the facts establishing probable cause, but simply carries out directions to arrest given by another officer who does have probable cause* . . .; and (2) those where the arresting officer has personal knowledge of facts which standing alone do not establish probable cause but, when added to information known by other officers involved in the investigation, tips the balance in favor of arrest[.]

*United States v. Hooker*, 416 F. App'x 467, 471 (5th Cir. 2011) (per curiam) (emphasis added) (quoting *United States v. Webster*, 750 F.2d 307, 323 (5th Cir. 1984)). An officer that has no personal knowledge of any facts can, for example, "act on the basis of information . . . which has been relayed to him by police transmission facilities," *United States v. Impson*, 482 F.2d 197, 199 (5th Cir. 1973); "act on the strength of a radio bulletin," *Whiteley v. Warden*, 401 U.S. 560, 568 (1971); and when "police officers [are] called upon to aid other officers in executing arrest warrants [they] are entitled to assume that the officers requesting aid . . . [had properly established] probable cause." *Id.*

Based upon the evidence presented in the Axon video, the Court finds that Officers Ferguson and Rule acted reasonably under the circumstances even if it is later decided they mistakenly concluded that probable cause was present. Therefore, they are entitled to immunity. *See Westfall*, 903 F.3d at 543. Moreover, Officer Bratina expressed to Ferguson and Rule his disagreement with Officer Lopez's probable cause finding. Ex. 5, Bratina Body Cam, at 03:19-

04:19. Officers Ferguson and Rule had no reason to question either Bratina's or Lopez's competence. The Fifth Circuit has held "if officers of reasonable competence could disagree [as to whether probable cause existed], immunity should be recognized." *Mendenhall*, 213 F.3d at 230 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *accord Carr v. Hoover*, No. 18-60603, 2020 LEXIS 37668, at *10 n.4, 2020 WL 7066334, at *4 n.4 (5th Cir. 2020) (per curiam). Officers Ferguson and Rule observed officers—who they could reasonably assume were competent—disagree as to the existence of probable cause. Applying the reasoning in *Mendenhall* to the facts and circumstances presented here, immunity for Officers Ferguson and Rule should be recognized.

Accordingly, the Court grants summary judgment in favor of Officers Ferguson and Rule and dismisses the claims against them. This dismissal includes any claim based on the theory of unlawful initiation or procurement of legal process. The evidence makes clear that neither officer put information before the prosecutor or magistrate that they knew to be false or that omitted pertinent facts.

## B. Defendant Lopez

"To ultimately prevail on [their] section 1983 false arrest/false imprisonment claim, [the Smiths] must show that [Lopez] did not have probable cause to arrest [them]." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001)). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Id.* at 655-56 (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)). The knowledge component is met when an arresting officer determines that there is a "fair probability" that the arrestee committed an

offense. *United States v. Turner*, 839 F.3d 429, 433 (5th Cir. 2016) (quoting *United States v. Watson*, 273 F.3d 599, 602-03 (5th Cir. 2001) (quoting *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999))). "Fair probability" is defined as "more than a 'bare suspicion' but less than a preponderance of evidence." *Id.* Thus, Officer Lopez "is entitled to qualified immunity if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [he] was aware, there was a reasonable probability that [Dr. or Mrs. Smith] had committed or was committing an offense." *Haggerty*, 391 F.3d at 656.

**1. Jennifer Taylor-Smith**

To satisfy his burden to inform the court of the basis for his motion, Officer Lopez points to his sworn declaration. ECF No. 60-5. Officer Lopez testifies that even though she had been told to leave, Mrs. Taylor-Smith returned to the school where the investigators were interviewing the former spouse; she tailed the former spouse in her vehicle, followed him into the Valero, and was told to stop following him; and that she showed up at the FBI building when the former spouse was inside with the investigators. *Id.* The Axon video evidence shows that Officer Lopez believed he had probable cause to arrest for interference based on making arrests on similar facts during his fifteen years with SAPD. Ex. 4 at 04:13-05:25. *See Westfall*, 903 F.3d at 534. Because an officer who reasonably but mistakenly believes probable cause exists is entitled to immunity, Officer Lopez is entitled to qualified immunity as to Mrs. Taylor-Smith.

**2. Lane Smith**

Officer Lopez's contention that there was probable cause to arrest Lane Smith is contradicted by Dr. Smith's sworn declaration, the text messages attached to Plaintiffs' response, and the video evidence. Viewing the summary judgment evidence and drawing all reasonable inferences in the light most favorable to Dr. Smith, there is a genuine dispute of material fact

regarding the existence of probable cause to arrest him for interference. Because the material facts are disputed, the Court cannot find that there was a reasonable but mistaken belief that probable cause existed. Accordingly, as to Lane Smith, the Court denies Defendant Lopez's motion for summary judgment.

## VI. CONCLUSION

For the reasons set forth above, it is **ORDERED** Defendants' motion for summary judgment, ECF No. 60, is **GRANTED IN PART AND DENIED IN PART**. The claims against Defendants Ferguson and Rule are **DISMISSED** with prejudice. Jennifer Taylor-Smith's claims against Officer Lopez are **DISMISSED** with prejudice. Lane Smith's claims against Officer Lopez **SHALL PROCEED**.

It is further **ORDERED** Defendants' objection to the video evidence is **OVERRULED**.

It is further **ORDERED** Defendants' motion for sanctions, ECF No. 72, is **DENIED** because any claim for unlawfully procuring legal process has been dismissed; the claims for failure to intervene have been dismissed; and in light of the Court's finding as to probable cause to arrest Lane Smith, the retaliation claim will proceed.

It is further **ORDERED** that the parties shall discuss the prospects for settlement in this case; these discussions shall take place in person or by video or teleconference. The parties shall notify this Court within thirty days of the date of this Order whether the case can be settled. If the case does not settle the Court will schedule a status conference to set the case for trial.

**It is so ORDERED this 11th day of February 2021.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**

17